**UNITED STATES COURT OF APPEALS**
**Filed 1/3/97**
**TENTH CIRCUIT**

JOHN ALLEN TEBBETTS,

        Plaintiff - Appellant,

        v.

JOE WHITSON, in his individual
capacity; STEPHEN GREEN, in his
individual capacity; LARRY HILL, in his
individual capacity, and John Doe;
ROBERT WORKMAN, in his individual
capacity; SUSAN WORTHINGTON, in
her individual capacity; JOHN DAVIS, in
his individual capacity; BOB HICKOX, in
his official capacity; BOB HICKOX, in
his individual capacity,

        Defendants - Appellees.

No. 96-1206

D. Colorado

(D.C. No. 96-S-677)

## ORDER AND JUDGMENT[*]

Before **ANDERSON**, **LOGAN**, and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34 (a); 10th Cir. R. 34.1.9.  This cause is therefore ordered submitted without oral argument.

John Allen Tebbetts, an inmate at the Delta, Colorado, Corrections Center, brought this civil rights action alleging that certain prison officials:  1) retaliated against him for providing legal assistance to other inmates; and 2) violated his due process rights by (a) placing him in segregation prior to a hearing, and (b) convicting him, without any evidence, of attempted bartering and of unauthorized possession. Tebbetts now appeals[1] the district court's dismissal of his civil rights claims pursuant to 28 U.S.C. § 1915(d),[2] and its dismissal of the remainder of his action for failure to exhaust state remedies

---

[1]Tebbetts filed his appeal on May 2, 1996.  Therefore, the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, which became effective on April 26, 1996, applies.  Nonetheless, Tebbetts notes that the district court granted him leave to proceed in forma pauperis on March 21, 1996, and he contends that Fed. R. App. P. 24 allows him to "proceed on appeal in forma pauperis without further authorization" since the district court did not certify that his appeal was not taken in good faith.  We agree.  However, as amended by the PLRA, § 1915(b)(1) clearly states the events which trigger assessment and payment of fees:  "[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." (emphasis added).  That is, a prisoner must pay fees on appeal, whether or not the district court's grant of in forma pauperis status continues under Rule 24.  The clerk's notice to Tebbetts was intended to alert him to the PLRA's requirements so that he might properly comply.

[2]28 U.S.C. § 1915(d) was amended by the PLRA and recodified at subsection 1915(e).

pursuant to 28 U.S.C. § 2254. He contends that the court 1) abused its discretion in finding that his civil rights action was legally frivolous; and 2) erred by construing the portion of his complaint which sought expungement of his convictions and restoration of earned and good time credits as a habeas corpus petition. For the reasons stated below, we deny his application for a certificate of appealability for his habeas action, and we affirm in part and reverse in part the dismissal of his civil rights claims.

Tebbetts alleges that, without any explanation or notice of charges, he was placed in segregation "due to a pending disciplinary action," on October 14, 1994. R. Vol. I, Tab C at 3, ¶ 12. Three days later, on October 17, 1994, defendant Workman reviewed his placement in segregation and ordered it continued. On the same day, Tebbetts was served with notices charging him with attempted bartering and unauthorized possession. The attempted bartering charge arose from letters to him from other inmates which contained offers to pay him for legal help. The unauthorized possession charge arose from his possession of legal papers belonging to another inmate. The disciplinary hearing was conducted on October 18, 1995. At the hearing, Tebbetts was convicted of both charges and sanctioned with punitive segregation, the loss of good time credits, and the automatic loss of statutory earned time.

A.  Civil Rights Claims:  Alleged Violations of Due Process and Retaliation.

Pursuant to former § 1915(d), a district court may dismiss an in forma pauperis action as frivolous if the "claim [is] based on an indisputably meritless legal theory" or if it is founded on "clearly baseless" factual contentions.  Neitzke v. Williams, 490 U.S. 319, 327 (1989).  We review such a dismissal for abuse of discretion.  Denton v. Hernandez, 504 U.S. 25, 33 (1992).

1.  Due Process - Liberty Interest.   In his first, second, third, and ninth claims below, Tebbetts alleges that Colorado DOC regulations and the Due Process Clause gave him a liberty interest in remaining free from pre-disciplinary segregation prior to a hearing.  R. Vol. I, Tab C at 7-9, 14.  As the district court correctly concluded, the guarantees of the Due Process Clause apply only when a person is to be deprived of life, liberty or property.  Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994).  Since an inmate is not entitled to any particular degree of liberty in prison, changes to an inmate's prison classification do not ordinarily involve deprivations of liberty.  Id. (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).  A move to segregation does not implicate constitutional liberty interests unless the segregation "exceed[s] totally discretionary confinement in either duration or degree of restriction."  Sandin v. Conner, 115 S. Ct. 2293, 2301 (1995).

Although a State or a prison may create liberty interests which are protected by the Due Process Clause, such interests "will be generally limited to freedom from restraint

which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 2300 (citations omitted). We have previously held that Colorado prison regulations do not create a liberty interest in an inmate's classification which would prevent discretionary placement in segregation for a variety of factors. Templeman, 16 F.3d at 369. Even if the pre-disciplinary segregation were "punitive" rather than "administrative,"[3] it did not impose an atypical and significant hardship in relation to the

---

[3]In his complaint, Tebbetts refers to his segregation as "pre-disciplinary." In his brief to us, Tebbetts argues that Templeman is distinguishable because it involved administrative segregation, whereas his case involves punitive segregation. However, the Supreme court has abolished such semantic distinctions, focusing instead on whether the conditions of punitive segregation "exceed similar, but totally discretionary confinement." Sandin, 115 S. Ct. at 2301. Tebbetts' general statement, that he suffered "loss of privileges and personal property, mental anguish, and personal humiliation," R. Vol. I, Tab C at ¶¶ 43, 48, 54, does not indicate such conditions.

Tebbetts also complains that his case is distinguishable from Templeman because in Templeman's case there was a pre-segregation hearing. Templeman, 16 F.3d at 369. As the district court correctly noted, the prison regulations expressly provide for pre-hearing segregation. See DOC Administrative Regulation 203-1 at ¶ 7(c)(6). Nonetheless, Tebbetts contends that his complaint cannot be dismissed as frivolous since the defendants have not been required to demonstrate that he "pose[d] an imminent and substantial threat to the security of the institution, other inmates or staff" as set forth in ¶ 7(c)(6). We note that Hewitt v. Helms, 459 U.S. 460, 470-71 n.6 (1983), involved similar regulations and standards under which an inmate could be put in segregation prior to a disciplinary hearing. Although Hewitt's holding that such regulations create a liberty interest has been abridged by Sandin, we also note that, in any event, Hewitt found that due process was satisfied since, *inter alia,* the prison officials were only obligated to review the charges against the inmate "within a reasonable time after confining him to

(continued...)

-5-

ordinary incidents of prison life. Thus, the district court properly concluded that Tebbetts' claims of due process violations relating to his pre-disciplinary segregation were legally frivolous.

2. Due Process - Disciplinary Hearing. In his fourth, fifth, sixth and seventh claims below, Tebbetts alleges that he was deprived of due process at the disciplinary hearing. R. Vol. I, Tab C, ¶ 57-85 at 9-13. As the district court correctly observed, a defendant in prison disciplinary proceedings does not have the same rights as a defendant in a criminal prosecution. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Constitutional due process is satisfied in a prison disciplinary proceeding if an inmate is provided: advance written notice of the charges, a limited opportunity to call witnesses and to present documentary evidence in his defense, and a written statement by the factfinders giving the reasons for the decision and the evidence upon which they relied. Id. at 564-66. In his complaint below, Tebbetts concedes that he was given advance written notice and an opportunity to call witnesses.

a. Attempted Bartering. As to the charge for attempted bartering, Tebbetts complains simply that there was no evidence in support of his conviction. According to his complaint, the presenting officer alleged that he had been sent four letters which "either contained or implied an offer to thank or compensate [Tebbetts] in some way for

---

³(...continued)
administrative segregation." Id. at 472.

legal assistance [Tebbetts] had provided or may provide in the future." R. Vol. I, Tab C at ¶ 22." Tebbetts' complaint states that he defended the charge of attempted bartering by avowing that he always refuses any offer of compensation, and by specifically pointing to one of his confiscated letters which advised the sender that he would accept no payment. Id. at ¶ 23-25. Thus, he contends that, at most, the letters provided evidence of unsolicited offers only, but there was no evidence that he ever initiated or accepted such offers.

The district court correctly noted that procedural due process requires only that there be "some evidence" to support the findings at the disciplinary hearing. Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985); Mitchell v. Maynard, 80 F.3d 1433, 1445 (10th Cir. 1996). Ascertaining whether this standard is satisfied does not require us to examine the entire record, assess witness credibility, or weigh evidence. Hill, 472 U.S. at 455-56. Rather, we determine whether there is any evidence that could support the disciplinary board's decision, and we will uphold that decision even if the evidence supporting it is "meager." Id. At 456-57.

Tebbetts argues that the district court could not properly find that the letters, which it never saw, constituted "some evidence" of his attempted bartering. We agree. On the record before us, we cannot determine that Tebbetts' claim is founded on an indisputably meritless legal theory or that it is factually baseless.

-7-

b.  Unauthorized Possession.  As to the charge for unauthorized possession, Tebbetts alleges that the regulation under which he was charged did not prohibit the possession of legal papers which he had drafted.  R. Vol. I, Doc. 3 at ¶ 30.  Alternatively, he alleges that the regulation "does not give adequate notice that it prohibits the conduct Plaintiff was accused of, without an unexpected or unusual interpretation of the plain language in the rule, in violation of the Due Process Clause. . . ."  Id. at ¶ 62.

Without discussion, the district court found that there was "some evidence" of unauthorized possession, and therefore dismissed the claim as frivolous.  However, the court did not address Tebbetts' contention that the regulation expressly permitted the possession of legal papers.[4]

DOC Administrative Regulation 203-1 at ¶ 6(b)(I)(19)(d) provides:

(19)  Unauthorized Possession - an inmate commits this offense when he has in his possession . . . or receives from or gives to another inmate . . . any contraband including, but not limited to:

. . . .

(d)  Form of securities, bonds, coins, currency, legal tender, official papers or documents (other than papers or documents relative to judicial or administrative proceedings) . . . .

Id. (emphasis added).

---

[4]The district court noted in passing that Tebbetts complained that the defendants improperly based his conviction on an "interpretation of the definition of that charge [which] was different from the plaintiff's interpretation."  R. Vol. I, Doc. 5 at 6.

Inasmuch as the district court dismissed Tebbetts' complaint pursuant to § 1915(d), the defendants were never required to answer or to explain the basis of their charge that Tebbetts' possession of another inmate's legal papers constituted unauthorized possession. On the limited record before us, and in light of the liberal construction we afford pro se litigants, we cannot conclude that Tebbetts' claim is founded on an indisputably meritless legal theory or that it is factually baseless. Therefore, we find that the district court abused its discretion when it dismissed Tebbetts' claims regarding the disciplinary hearing, and we remand for further proceedings and development of the record as to the claims regarding Tebbetts' convictions for attempted bartering and unauthorized possession.

3. Retaliation for the Exercise of a Constitutionally Protected Right. In his eighth claim, Tebbetts alleges that the defendants conspired to retaliate against him because he provides legal assistance to other inmates. We agree with the district court's analysis. A prison official's retaliation against an inmate for his exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983. Frazier v. Dubois, 922 F.2d 560, 561-62 (10th Cir. 1990). However, prison inmates have no protected interest in providing legal representation to other inmates. Smith v. Maschner, 899 F.2d 940, 950 (10th Cir. 1990). While an inmate may have a constitutional right to assist others for the purpose of effecting system-wide changes in conditions for all inmates, id., Tebbetts does not allege

any such purpose.[5] In his brief to us, he states generally, that he should be given an opportunity to amend his complaint to allege that the retaliation was for providing assistance to others, "as well as his own legal activities." Appellant's Br. at 16 (emphasis omitted). Thus, he claims that, as a pro se litigant, he should have been given the opportunity to further develop the facts to state a claim in his own right. Liberally construing each claim, we have thoroughly reviewed the complaint in an effort to uncover anything which might suggest any legal activity on Tebbetts' own behalf. We conclude that the district court did not err in failing to divine or speculate upon this enlarged claim which Tebbetts fully omitted, and it did not err in failing to sua sponte allow Tebbetts the opportunity to amend.

In a related allegation under his fourth claim, Tebbetts contends that he was deprived of his First Amendment rights, because the disciplinary conviction for unauthorized possession "interferes with legal correspondence between the Plaintiff and another inmate." R. Vol. 1, Tab C at ¶ 63. We have already noted that an inmate has no protected interest in providing legal assistance to other inmates. Smith, 899 F.2d at 950 (noting that Johnson v. Avery, 393 U.S. 483, 490 (1969) permits a prison to "prohibit

_____

[5]Alternatively, Tebbetts contends that he should be allowed to amend his complaint to develop facts to show that his assistance "was intended to cause system-wide changes in prison conditions for all inmates." Appellant's Br. at 18. However, his list of activities, i.e., "assisting other inmates with their habeas corpus petitions, encouraging and offering to help his fellow students in legal matters," id., suggests no such purpose. While we liberally construe a pro se litigant's pleadings, we will not supply facts or legal theories. Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989).

-10-

inmates from giving legal assistance if reasonable alternative available"). Tebbetts has not alleged that the inmates he assists had no alternative to his assistance. Accordingly, the district court correctly concluded that he has no First Amendment right to possess legal documents which belong to other inmates.

       B.  Habeas and Challenges to Length of Confinement.

Finally, Tebbetts contends that the district court erred in treating a portion of his complaint as a habeas petition. Although he concedes that his request for an injunction ordering defendants to expunge his disciplinary convictions would ultimately affect the duration of his confinement, he argues that habeas is not the sole remedy.[6] Our cases state otherwise. "As a general rule, a challenge to the . . . duration of confinement[ ] is cognizable only under the habeas statute with its requirement of exhaustion of state remedies." Richards v. Bellmon, 941 F.2d 1015, 1018 (10th Cir. 1991) (citing Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973); see also, Smith, 899 F.2d at 951. The district court did not err in treating the portion of his action which sought expungement of his disciplinary conviction as a habeas action, subject to exhaustion requirements.

---

     [6]Tebbetts cites Lenea v. Lane, 882 F.2d 1171 (1989), for this proposition. However, Lenea specifically noted that the defendants had waived the argument that the suit was properly a habeas action because they had failed to timely raise it below. Id. at 1173 n.4. Tebbetts also argues that Smith, 899 F.2d at 951 contemplates a single § 1983 action for money damages as well as restoration of good time credits. In fact, Smith clearly states otherwise: "Smith also seeks the restoration of good time credits. His remedy . . . is a writ of habeas corpus. . . ." Id.

Accordingly, we DENY the certificate of appealability, and, as set forth above, AFFIRM IN PART and REVERSE IN PART, and REMAND for further proceedings consistent with this opinion.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge